HEGGE, Respondent, vs. HARTFORD ACCIDENT & INDEMNITY COMPANY and another, Appellants.*

*November 18—December 15, 1948.*

---

* Motion for rehearing denied, with $25 costs, on February 15, 1949.

146

For the appellants there was a brief by *Hale, Skemp & Nietsch* of La Crosse, and oral argument by *Quincy H. Hale.*

For the respondent there was a brief by *Johns, Roraff & Coleman,* and oral argument by *Robert D. Johns* and *Peter G. Pappas,* all of La Crosse.

HUGHES, J.   The plaintiff is a lady thirty-one years of age who works as a private secretary in La Crosse.   On the evening of July 11, 1947, Miss Hegge had been out to dinner with a group of friends and returned to her apartment at approximately ten o'clock.

The defendant Bigley lived in La Crosse and had had dates with Miss Hegge prior to going into service when he had a car and they frequently rode together.   Since his return from service defendant had not owned a car.   Bigley is employed in Viroqua where he has a room.

In the late afternoon of July 11th Bigley played golf at the country club, had a bottle of beer, then ate his dinner there with friends and sat around talking.   At some time during or after the dinner Mr. G., an acquaintance of Bigley, came into the country club.   Mr. G. lives in La Crosse and manages a tavern at Viroqua.   Bigley arranged to ride to La Crosse with G. and return with him the following morning to Viroqua, so that he might pick up some articles of clothing at his parents' home.

G. and Bigley arrived in La Crosse and went to the Linker Hotel bar.   Bigley called Miss Hegge about fifteen minutes after she arrived home from the dinner and suggested that she come down and have a drink with him at the Cavalier, a tavern a couple of blocks from the Linker.   He offered to send a cab, but plaintiff preferred to go by bus.   They met on the corner

near the Cavalier as plaintiff alighted from the bus. They went to the Cavalier where they remained from about 10:45 or 11 p.m. until about 1 a.m. when the tavern closed. They testified that during this time they sat at a table and each consumed two bourbon and water highballs.

Plaintiff testified that she did not know that Bigley called her from the Linker, nor did she know that he had anything to drink at the Linker.

Mr. G., who was at the Cavalier when Miss Hegge and Bigley arrived, showed evidence of drink and circulated between their table and the bar, consuming sufficient liquor to become intoxicated. At one o'clock Mr. G. was in no condition to drive, so he loaned Bigley his car to take Miss Hegge home. With Mr. Bigley driving they dropped Mr. G. at his home, and then, because it was hot in the city, Bigley and the plaintiff drove up Bliss road to the top of Grand Dad bluff. After a half hour or so they started the descent of what all agree is a hazardous road. They negotiated most of the trip down, the car leaving the highway over an embankment into the trees at about the last curve before reaching the city.

The evidence disclosed that before starting the descent the plaintiff twice inquired of Bigley if he wanted her to drive down. Her reason for asking, she said, was because he yawned and stretched. She at no time considered that he was under the influence of intoxicating liquor.

The plaintiff's testimony was that immediately before the accident she was sitting with her back to the door, with her knees up on the seat, facing the defendant; that she saw him turn the steering wheel to the right, and that the front of the car started to respond, but in a moment the car hit something and she got a terrific jolt.

The testimony was such that a jury might conclude that Mr. Bigley had consumed more liquor than he admitted. It would appear that this accident happened either as a result of

defendant's momentary negligence with respect to lookout, or his lack of capacity to handle the car because of liquor consumption or physical exhaustion, or both. The inferences are for the jury on a verdict properly framed.

The verdict as returned by the jury is patently inconsistent. Unless the defendant was guilty of negligence in driving the automobile while under the influence of intoxicating liquor or while so physically exhausted as to be incompetent, the plaintiff cannot be guilty of negligence for her own safety in riding with him in "his then physical condition."

We are of the opinion that upon the record the trial court, in addition to the questions submitted by it, should have made inquiry as to whether defendant was negligent in operating the automobile at the time of the accident because rendered incompetent either by consumption of alcoholic liquor or by physical exhaustion. If either of these questions had been answered in the affirmative by the jury, then the question of assumption of risk would be in the case.

*By the Court.*—Judgment reversed and cause remanded for a new trial.